[No. 2012.]

### Edward Foster *v.* The State.

Theft — Fact Case. — See the opinion and the statement of the case for evidence held insufficient to support a conviction for theft.

Appeal from the District Court of Dallas. Tried below before the Hon. G. N. Aldridge.

The conviction in this case was for the theft from the person of A. J. Harper of a pocket-book and $15, in Dallas county, Texas, on the 1st day of January, 1885. A term of three years in the penitentiary was the punishment assessed against the appellant.

A. J. Harper was the first witness for the State. He testified that, on the 22d day of November, 1884, he arrived in Dallas, Texas, on his way from Alabama to Arlington, Texas. The witness's ticket took him to Dallas, where, as he was informed by the conductor on the train, he would be able to purchase his ticket to Arlington, as the train stopped at the union depot in Dallas, twenty minutes for supper. When the train stopped at the union depot, the witness started to leave the train to get his ticket to Arlington. When he reached about the middle of the steps, a man threw his arms around the witness and slipped his hand into the witness's pocket. At the same time the witness noticed another man standing down on the platform. That man grabbed at witness but missed him, and witness went on to the ticket office, and called for tickets to Arlington. The tickets being furnished, the witness felt for his pocket-book to get the money to pay for them. His pocket-book was gone, and the witness realized that he had been robbed as he got out of the car. Witness did not know how much money he lost. He had $147 when he started from Alabama. Of this he paid $114 for tickets, and perhaps eight or ten for supplies for himself and children *en route.* The money and pocket-book were taken in Dallas county, Texas, without the consent of the witness.

Cross-examined, the witness stated that he was not used to traveling. The car on which the witness rode into Dallas was pretty well filled with passengers. Witness hurried to get off and purchase his tickets, fearing he would be left. Witness was about half way down the car steps when he was seized by the man. The night was very dark. The man who seized the witness was a heavy set man, wearing a light moustache. He seemed to be going into the car as the witness was going from it. Witness could give no description of the man who stood on the platform and caught at him as he passed going to the ticket office. Witness could not identify the defendant as either the man who threw his arm around him on the car steps, or the man who, standing on the platform, caught at him. Witness thought nothing of the possibility of being robbed at the time, nor did he know that he was robbed until he reached the ticket office. The pocket-book was taken from witness's pants pocket.

Gus Bogle, a witness for the State, testified that, while standing on the platform at the union depot in Dallas, one evening, he saw two men rob a man who was then leaving a car. One man caught the man robbed by an arm, and the other man put his hand under the robbed man's coat, and took something which witness took to be a pocket-book. Witness did not know that the article taken was a pocket-book until afterwards, when he heard that a man had been robbed. Witness afterwards saw the same two men and two others examine what he took to be a bottle of whisky. One of the men said to the other, "Don't you pull out that bottle; don't you see the cop?" The defendant is the man who caught hold of Harper's arm while the other man did the robbing. The men ran around the depot into the lumber yard, and witness told a policeman what he had seen.

Cross-examined, the witness stated that he was standing on the car platform at the time of the robbery, having gone there a few minutes before the robbery was perpetrated. The man who was robbed was at the time of the robbery between the witness and the robber. It did not, at the time, occur to witness that a robbery was being perpetrated, or he would then have given the alarm. Witness had never seen either of the two men who perpetrated the robbery prior to that evening, but has frequently seen defendant since his arrest. A. J. Harper was at the opposite end of the car when the robbery was committed. Witness was a bootblack, and had been sent several times to the poor farm for theft and fighting. He had never been in the penitentiary. The State rested.

W. H. Ramsey, for the defense, testified that he was a member of the Dallas police force, and was a watchman for the Texas & Pacific Railway at the union depot. Witness was on duty on the night of the alleged robbery. When he heard of it he walked down the road line and saw four men examining what he took to be a bottle. One of the men exclaimed: "Look out; there is a policeman." Witness passed the men, looked at them, and they went off. Some one then remarked: "There they go." Gus Bogle told the witness that the men had gone into the lumber yard. Witness went to the lumber yard, but found no one. Witness had been on the police force about seven years. Witness rarely, if ever, forgot a face after once seeing it. He was unable to identify the defendant as one of the four men he saw examining the bottle, or whatever object it was. Witness took no special notice of the four men. Witness did not allow Gus Bogle to go on the cars at the union depot.

Cross-examined, the witness said that he saw Gus Bogle at the depot on the evening of the robbery. Witness was not present when the robbery was said to have been committed, but was somewhere on the platform of the depot.

Sheriff W. H. W. Smith testified, for the defense, that Gus Bogle's reputation for truth and veracity was very bad. Two or three other witnesses testified to the same effect.

The motion for new trial raised the question discussed in the opinion.

*Fitzhugh & Wozencraft*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WILLSON, JUDGE. Manifestly the evidence does not support this conviction. Harper, whose pocket-book and money are alleged to have been stolen from his person by the defendant, could not identify the defendant as a party connected with the theft. Bogle, the only other State's witness, states that he saw the defendant and another man, on the same night and at the same place when and where Harper's pocket-book and money were stolen, steal from the person of some one what he, the witness, took to be a pocket-book. But the theft testified about by Bogle could not have been the theft of Harper's pocket-book and money, because Bogle testifies most positively that Harper was not present at the commission of the theft which he, the witness, testified about, but was at the other end of the

train.   The credibility of this witness Bogle was successfully impeached; but, even conceding the truth of all he stated, his testimony does not connect the defendant with the theft charged in the indictment, but relates to another and different theft.   There is not a particle of evidence connecting the defendant with the theft from the person of Harper, and we are at a loss to conceive any legitimate process of reasoning by which, upon this evidence, the jury could have arrived at a verdict of guilty, or by which the learned trial judge could have sanctioned such a verdict.

Because the verdict is not supported by the evidence, and because the court for that reason  erred in not granting the defendant's motion for a new trial, the judgment is reversed, and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered October 21, 1885.]